**UNITED STATES**
v.
**READING COMPANY.**
Civ. A. No. 22787.

United States District Court
E. D. Pennsylvania.
June 2, 1960.

Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., George F. Foley, Asst. Atty. Gen., Civil Division, Dept. of Justice, Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

White & Williams, by John Dautrich, Philadelphia, Pa., for defendant.

GRIM, District Judge.

In May of 1955 the Commodity Credit Corporation shipped by rail several carloads of frozen beef which were to be loaded aboard ship in Philadelphia for export. Three carloads of beef, sent in refrigerator cars to defendant Reading Company's Port Richmond Terminal in Philadelphia, were spoiled because the cars were not iced while they lay at the terminal for a period of more than a week. The cars remained at the terminal on instructions of American Export Lines, acting as agent for the government, to await the arrival of the ship on which the beef was to be loaded. When the ship docked, the cars were re-iced and moved to the pier. The spoilage was discovered when the cars were opened.

The government has brought this action to recover the value of the meat. The facts are stipulated. Each party has moved for summary judgment.

Two of the cars were shipped from Boston, Massachusetts, and the other from Austin, Minnesota. They moved under straight bills of lading, two of which bore this notation:

"Precool 24 hours before loading with coarse ice and 30% salt. Replenish to capacity and 30% salt at all regular icing stations and oftener if delayed."

The third bill of lading contained the same notation, in which was incorporated before the words "all regular icing stations" the notation:

"Before forwarding reice to capacity and 30% salt."

The notice of arrival of the cars which the railroad gave to American Export Lines contained the notation "Reice to cap and 30% salt."

The issue in this case is whether there was a duty on the railroad to reice the refrigerator cars while they lay at Port Richmond. The government contends that there was such a duty on the railroad, and the railroad contends that there was not. Both parties base their positions on Perishable Protective Tariff No. 16, effective November 16, 1953.

The railroad contends that it was relieved of liability for re-icing at Port Richmond by a portion of Rule 406 of the tariff. Rule 406 provides:

"(A) When shipment * * * is held * * * after arrival in the terminal train yard serving the destination and up to the time it is in process of unloading on team tracks or until placed on private track * * * carrier will examine bunkers or tanks daily and unless written instructions * * * from shipper, owner or consignee are received to the contrary when car requires additional ice or ice and salt during such period it will be reiced.

\*　　\*　　\*　　\*　　\*　　\*.

"(E) The provisions of this rule will not apply:

\*　\*　\*　\*.　\*　\*

"3. On shipments of meat that have reached final destination [1] and which are held on tracks of the Reading Company, pending instructions from consignees to place for unloading * * * "

There is no real dispute between the parties over the proposition that if Rule 406 applies, the railroad was not under a duty to re-ice.

The government contends that Rule 406 is not applicable, but that the matter is governed by Section 2 of the tariff, which requires re-icing. This contention is based on a statement on the title page of Section 4 (Rule 406 is part of Section 4):

"Section 2 Takes Precedence Over This Section"

and a statement on the title page of Section 2:

"The provisions of this Section take precedence over Section 4."

The first portion of Section 4 of the tariff is Rule 400, which provides in part:

"(A) Charges for ice or salt * * * published in Items 22100 to 22198, inclusive, apply as follows:

"(1) When service supplied is not included within the charges applicable as provided in Sections 2 and 6, the rules and charges in this Section will apply to shipments of perishable freight including the following commodities:

"Meats (Fresh), in straight or mixed carloads * * * "

Section 6 deals with less-than-carload shipments and hence has no application to this case.

The title of Section 2 is:

"Section No. 2.

"Charges and Special Rules Governing Refrigeration Services

(As provided in this Section) On Carload Shipments * * * Of Fruits, Vegetables, Berries, Melons and Other Perishable Freight As Provided For In This Section * * * "

The first provision of Section 2 is Rule 200, which provides:

"(A) Charges:—Refrigeration service charges as published in this Section apply on fruits, vegetables, berries, melons, and other perishable freight. Where a refrigeration charge on any commodity is published in this Section the rules, regulations and charges published in Section 4 will not apply, except as may be otherwise provided in individual rules in this Section."

Rules 200 to 275 take up the first 51 pages of Section 2. The remaining 260 pages of Section 2 consist of tables of rates for different types of refrigeration services to various points in the United States and Canada. The first of these tables, for instance, is for shipments from all stations in Alabama to all these points (the destinations being grouped). Rates in dollars and cents per carload are given in columns for the following named commodities: Fruits, Berries, Melons, Vegetables, and Cucumbers, and for different types of refrigeration services.

Two of the cars involved in this suit were shipped from Boston, Massachusetts. The table at page 198 of the tariff gives the rates under Section 2 from all stations in Massachusetts. The only commodities listed on this table are: "Column 1—Berries, Fruits (except Apples) and Vegetables. Column 2—Melons. Column 3—Apples." The table gives no rate for any other commodity, and specifically no rate is given for meat.

The third car involved in this suit was shipped from Austin, Minnesota. The tables at pages 258 to 261 of the tariff

---

[1] Port Richmond is the final destination. Stipulation, par. 21.

give the rates under Section 2 from all stations in Minnesota. The only commodities on this table are: "Fruits, Berries, Vegetables, Melons." These tables give no rate for any other commodity, and specifically no rate is given for meat.

The tables on pages 198 and 258 are the only tables in Section 2 which give rates for shipments from Massachusetts and Minnesota. Since the tables in Section 2 give no rates for meat from these states, the excluding provision of Rule 200[2] does not operate, and Section 2 does not apply to the shipments in this case. This conclusion is buttressed by an examination of a number of the tables in Section 2. In none of the tables examined was any rate given for meat, and in every listing found for "Other Perishable Freight" a footnote excepted "Fresh Meats."

Since Section 2 of the tariff does not apply to the shipments involved in this case, Rule 406(E)3 does apply, and the tariff imposed no duty on the railroad to re-ice the three cars while they lay at Port Richmond.

■ The government makes the further contention that irrespective of the tariff provision the railroad is liable for the spoilage of the meat under 49 U.S. C.A. § 20, par. (11), which provides:

"Any common carrier * * * subject to the provisions of this chapter receiving property for transportation * * * shall issue a * * * bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability imposed; and any such common carrier * * * delivering said property * * * shall be liable * * * for the full ac-

tual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery * * * in any such receipt or bill of lading, or in any contract, rule regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * *."

The applicability of the statute to the railroad depends on whether the damage to the shipments of meat was "caused by it," i. e. caused by the railroad. The damage was caused by the fact that the cars were not re-iced while they lay at Port Richmond awaiting the arrival of the ship that was to carry the meat overseas.

The tariff provided that the railroad was not to re-ice at this point. The consignee was given prompt notice of the arrival of the cars and of the fact that there were icing instructions on the bills of lading which applied while the cars were on their way to Philadelphia. The consignee, had it seen fit, could have arranged for re-icing.

It must be borne in mind that re-icing costs money and that every re-icing would have meant additional charges to the government. The effect of Rule 406 (E)3 of the tariff was not to deprive the government of refrigeration, but to leave to the government or its agent, who knew best when the ship would be available, the decision as to whether additional money was to be spent for re-icing. The failure to re-ice was the failure of the consignee and not of the railroad.

Plaintiff's motion for summary judgment will be refused. Defendant's motion for summary judgment will be granted.

---

**2.** "Where a refrigeration charge on any commodity is published in this Section the rules * * * published in Section 4 will not apply * * *."